IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FREDRICK T. KOZISEK, | ) | 4:07CV3008 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| COUNTY OF SEWARD, NEBRASKA, | ) | |
| and JOE RUZICKA, individually and in | ) | |
| his capacity as Chairman of the Seward | ) | |
| County Board, | ) | |
| | ) | |
| Defendants. | ) | |

    The plaintiff, Fredrick Kozisek, was employed by Seward County, Nebraska, for approximately 25 years. He began working as a weed control officer in 1981, but in 1994 was appointed to fill the combined positions of County Veterans Service Officer (CVSO), Building and Grounds Superintendent, and General Assistance Administrator. The CVSO position was made his full-time job in 2004. Kozisek's employment was terminated on October 4, 2005, after he refused to enroll in an inpatient alcohol treatment program as directed by the county board. The board's directive was based on the report of a substance abuse counselor who evaluated Kozicek after he was arrested on July 23, 2005, for making terroristic threats and using a firearm to commit a felony. The criminal charges were filed after Kozisek's wife reported that he had gotten drunk and, after shooting some farm animals, had threatened to shoot her next.

    Kozicek claims that the county had no statutory authority to fire him as the CVSO, and that he was discharged without due process of law. He also alleges that his discharge was retaliatory, because he had spoken out on matters of public concern by complaining to the Board about not having enough funding for veterans services and, prior to 2004, not being able to work full-time as the CVSO. Finally, Kozisek

claims that the county violated the Americans with Disabilities Act because he has post traumatic stress disorder and was perceived to be an alcoholic.

The defendants, Seward County and its county board chairman, Joe Ruzicka, have moved for summary judgment on all claims. After careful consideration of the pleadings, briefs, and evidence, I find that there is no genuine issue of material fact and conclude that the defendants' motion should be granted.

### *I. DISCUSSION*

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir.1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

### A. *Procedural Due Process Claim*

To survive summary judgment on his property interest procedural due process claim, Kozisek must provide evidence that he "had a reasonable and legitimate expectation of continued employment." *Howard v. Columbia Public School Dist.*, 363 F.3d 797, 803 (8th Cir. 2004). Whether he had a constitutionally protected property interest in his job is dependent upon Nebraska law and the terms of his employment. *See id.*

Kozisek only argues that he had a protected property interest in the CVSO position by virtue of Neb. Rev. Stat. §§ 23-2001 to 23-2009, which provide for the removal of county officers through judicial proceedings. I find no merit to this

3

argument. Kozisek was not a "county officer" within the meaning of those statutes, which apply only to elected officials. *See, e.g.,* Neb. Rev. Stat. § 23-2007 ("[I]f the accused is found guilty, judgment shall be entered removing the officer from his office, and declaring the latter vacant, and the clerk shall enter a copy of the judgment in the election book."). Indeed, under the Nebraska Constitution, county officers must be elected. *See* Neb. Const. art. IX, § 4 ("The Legislature shall provide by law for the election of such county and township officers as may be necessary . . ..").

The evidence conclusively shows that Kozisek was employed at-will by the county. Although he was appointed to the CVSO position by the county veterans services committee, subject to the county board's approval, his salary and benefits were always paid directly by the county.[1] There was no written contract, and the employee handbook that Kozisek received stated that the employment relationship was at-will. Kozisek also testified that he felt free to resign at any time, and he admitted there was never any guaranty that he would hold the CVSO position for a set period of time. Kozisek's procedural due process claim thus fails as a matter of law.[2] *See Ginter v. City of Ashland*, No. 8:05CV148, 2005 WL 2347234, *3 (D.Neb.

---

[1] Every county board in Nebraska is required to appoint a 5-member county veterans service committee, and to provide funding for the committee. *See* Neb. Rev. Stat. §§ 80-101, 80-102, and 80-409. Each committee appoints a county veterans service officer "subject to confirmation by the county board." Neb. Rev. Stat. § 80-407. The appointment is not made for a definite term, *see id.*, but there is evidence that the Seward County Board reaffirmed Kozisek's appointment annually. By law, the county board must pay a full-time CVSO a minimum annual salary. *See* Neb. Rev. Stat. §§ 23-1114 to 23-1114.07. The CVSO can be employed on a part-time basis, however. *See* Neb. Rev. Stat. § 80-407.

[2] In any event, the evidence shows that Kozisek received three letters from the county board advising him that his employment could and would be terminated unless he enrolled in and completed an inpatient alcohol treatment program, and that he also was granted an hour-long meeting with the board during a closed-door session on September 27, 2005, to discuss the situation.

Sep. 26, 2005) (dismissing due process claim where plaintiff failed to allege any facts showing that he had a "legitimate claim of entitlement" to his employment) (citing *Thompson v. Adams*, 268 F.3d 609, 611 (8th Cir. 2001)).

### *B. First Amendment Claim*

> A public employee alleging a violation of the right to free speech must show that the speech in question is entitled to the protections of the First Amendment. The speech must address a matter of public concern. *See Buazard v. Meridith*, 172 F.3d 546, 548 (8th Cir.1999). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context" of the speech, and that speech must relate to some "matter of political, social or other concern to the community." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 146-47, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).
>
> When a public employee's speech is purely job-related, that speech will not be deemed a matter of public concern. *Id.* Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment. *Id.* However, a public employee does not necessarily give up his right to free speech, and the protection of the First Amendment, simply because his speech is private, and not expressed to the public. *See id.*, at 549 (citing *Givhan v. Western Consolidated School Dist.*, 439 U.S. 410, 414, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)).
>
> Whether the employee's speech is about a matter of public concern presents a question of law for the court to decide. *See de Llano v. Berglund*, 282 F.3d 1031, 1036 (8th Cir.2002) (citing *Connick v. Myers*, 461 U.S. 138, 148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Matters of public concern include matters of political, social, and other concern to the community. *Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir.2000) (citing *Connick*, 416 U.S. at 147-48).

*Id.*, 2005 WL 2347234 at *3-4.

Kozisek claims that he engaged in protected speech when he presented the county veterans service committee's annual budget requests to the county board and when he requested that the CVSO position be made full-time. These communications with the county board were purely job-related, and were not protected speech.

Furthermore, there is no evidence that Kozisek's employment was terminated because of these communications. As Kozisek even states in his brief, he "was fired because he wouldn't go to inpatient treatment, plain and simple." (Filing 36, at 23.) Kozisek thinks that enrollment in an alcohol inpatient treatment program was made a condition of his continued employment simply because the county board wanted an excuse to fire him, in part because of the annual budget requests,[3] but there also is no evidence to support this supposition.

### C. ADA claim

To establish a prima facie case under the ADA, Kozisek "must show that [he] was a disabled person within the meaning of the ADA, that [he] was qualified to perform the essential functions of the job, and that [he] suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." *Miners v. Cargill Communications, Inc.*, 113 F.3d 820, 823 (8th Cir. 1997). "With respect to this first element, '[t]he ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Christensen v. Titan Distribution, Inc.,* 481 F.3d 1085, 1093 (8th Cir. 2007) (quoting *Webner v. Titan Distribution, Inc.*, 267 F.3d 828, 833 (8th Cir.2001) (in turn quoting 42 U.S.C. § 12102(2)). "The term 'substantially limited' means 'unable to perform' or 'significantly restricted as to the

---

[3] Kozisek also theorizes that one of the board members had a personal vendetta against him because of a noxious weed citation he issued back in the mid-80's, and that another board member disliked a job description he wrote.

6

condition, manner or duration under which' of performing a major life activity. *Wenzel v. Missouri-American Water Co.*, 404 F.3d 1038, 1041 (8th Cir. 2005) (quoting 29 C.F.R. § 1630.2(j)(1)(i)-(ii)). "Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* (citing *Genthe v. Lincoln*, 383 F.3d 713, 716 (8th Cir. 2004)).

In this case, there is evidence that Kozisek was impaired both by alcohol abuse and by post traumatic stress disorder (PTSD), but there is no evidence that the PTSD at any time substantially limited any of Kozisek's major life activities. There also is no evidence that the county board ever perceived Kozisek's PTSD to be such an impairment.[4] On the other hand, it is undisputed that the county board would not let Kozisek return to work until he completed an inpatient alcohol treatment program. This fact alone might be enough to prove a prima facie case. *See Miners*, 113 F.3d at 824 (employer's "treatment-or-discharge ultimatum" provided evidence that it regarded the plaintiff as disabled and also created an inference that her firing was motivated by unlawful discrimination). I will assume that it is, and will move on to the next stage of the familiar burden-shifting analysis.[5]

---

[4] "For ADA purposes, the definition of 'regarded as disabled' assumes that the individual is not actually disabled." *Christensen*, 481 F.3d at 1092 n. 2 (citing *Wenzel*, 404 F.3d at 1041). "An employer regards an employee as disabled if it 'mistakenly believes that the employee has an impairment (which would substantially limit one or more major life activity), or [it] mistakenly believes that an actual impairment substantially limits one or more major life activity.'" *Id.* at 1093 (quoting *Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 988 (8th Cir.2007) ( in turn quoting *Wenzel*, 404 F.3d at 1041)).

[5] "[I]f an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext . . . when bypassing the prima facie case analysis leads to clarity in framing the issues under review." *Stewart v. Independent School Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007).

Once a plaintiff has made out a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 823 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The burden of production then shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for unlawful discrimination. *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993)). After the burden of production has shifted back to the plaintiff, the evidence produced to show a prima facie case and the "inferences drawn therefrom may be considered by the trier of fact on the issue of whether the [employer's] explanation is pretextual." *Id.* (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10 (1981)).

In this case, the county states that Kozisek was fired because he refused to enter an inpatient alcohol treatment program, and it has provided evidence that there were legitimate, nondiscriminatory reasons for requiring such treatment. On July 26, 2005, shortly after the criminal charges were filed against Kozisek, he entered into a written agreement with the county that gave him a 30-day period of paid leave to obtain a psychological evaluation and a drug and alcohol evaluation. The agreement recites that the county had information that Kozisek had been under the influence of alcohol and controlled substances, and that firearms were involved in the incident; the agreement also recites that the county has a policy to provide a safe working environment for its employees and the public,[6] that it promotes a drug-free and alcohol-free work environment, and that it encourages drug and alcohol treatment. A substance abuse counselor at the Veterans Administration facility in Omaha who saw Kozisek on August 1, 2005, concluded in a letter "to whom it may concern" that "it is apparent he has an alcohol problem" and stated that he was scheduled to enter a month-long residential treatment program on August 18, 2005. (Filing 27, Exhibit 7A.) The county relies on this letter to justify its decision to fire Kozisek.

---

[6] The county has also presented evidence that some county employees expressed fear for their own safety after hearing about the criminal charges that had been filed against Kozisek.

8

Kozisek, who denies that he is an alcoholic, argues that the reason given by the county for his firing is pretextual because the evidence fails to establish that he actually needed inpatient treatment. In this regard, Kozisek informed Ruzicka that he did not intend to enter the VA inpatient program, and that he was getting another drug and alcohol evaluation at the Blue Valley Mental Health Center. Kozisek was seen by a substance abuse counselor at Blue Valley on August 11 and 30, 2005,[7] and was diagnosed with "alcohol abuse." It was recommended that he participate in an outpatient treatment program. (Filing 27, Deposition Exhibit No. 8.) The report stated that "upon consultation with a Psychologist [under contract with Blue Valley], it is believed it would be beneficial for the client's Outpatient Substance Abuse treatment Counselor to work closely with the counselors who are providing the Post Traumatic Stress Disorder counseling [at the VA facility in Omaha, as reported by Kozisek]," and that an inpatient program "is not being recommended at this time based on the belief an individualized Outpatient Program would allow for the client's specific needs to be addressed along with allowing for coordination with the PTSD counselor." (*Id.*)

On August 31, 2005, Ruzicka notified Kozisek that he had 10 business days to enroll in an inpatient treatment program or else face termination of his employment. This was followed by a letter on September 20, 2005, in which Ruzicka notified Kozisek that the county board would be meeting in closed session on September 27, 2005, to discuss his continued employment, and invited him to attend. Kozisek attended the meeting, which lasted for about an hour, and unsuccessfully tried to convince the county board that there was no legitimate basis for requiring inpatient treatment. Immediately following the meeting, Ruzicka informed Kozisek by letter

---

[7] The evidence shows that Kozisek entered into a second written agreement with the county on August 26, 2005, which gave him an additional 30 days to obtain evaluations. The agreement recites that Kozisek had provided the county with a doctor's verification that the should not return to work before October 1, 2005, but there is no other evidence of this fact.

9

that his employment would be terminated if he did not enroll in an inpatient alcohol treatment program by October 3, 2005. On September 28, 2005, Kozisek obtained a letter from the VA staff psychiatrist who was treating him for PTSD, stating that "[i]npatient treatment was suggested [by the VA's substance abuse counselor] but later a community-based program was approved keeping in view veterans place of living." (Filing 27, Deposition Exhibit No. 12.) Kozisek was fired when he failed to meet the October 3rd deadline for entering an inpatient treatment program.

While there may be a fact question concerning Kozisek's need for inpatient treatment of his alcohol problem, the question is immaterial. "To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a 'phony excuse.'" *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005) (quoting *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir.2004)). The county has shown that its decision to require inpatient treatment was made after it received the evaluation letter from the VA substance abuse counselor stating that Kozisek had an alcohol problem and would be admitted to the VA's inpatient alcohol treatment program. Regardless of whether the county board misconstrued the letter as indicating that Kozisek necessarily required inpatient treatment, and regardless of whether a better choice might have been to follow the subsequent recommendation of the Blue Valley substance abuse counselor by requiring outpatient treatment, it cannot reasonably be concluded that the board's decision to condition Kozisek's continued employment upon his completion of an inpatient treatment program was a "phony excuse" for getting rid of him.

If the county board considered Kozisek to be unfit for work because of an alcohol abuse problem (which, of course, is the claim that Kozisek is making), then it was required to provide a reasonable accommodation that would permit Kozisek to return to work without creating an undue hardship for the county. *See* 42 U.S.C. § 12112(b)(5)(A). The question whether an employer has provided a "reasonable

10

accommodation" is ordinarily a question of fact. *Frye v. Aspin*, 997 F.2d 426, 428 (8th Cir. 1993). *See also E.E.O.C. v. Convergys Customer Management Group, Inc.*, 491 F.3d 790, 796 (8th Cir. 2007) ("Whether an accommodation is reasonable is a question of fact to be decided by a jury."). However, "the court's function in addressing a summary judgment motion 'is to determine whether a dispute about a material fact is genuine, that is, whether a reasonable jury could return a verdict for the nonmoving party based on the evidence.'" *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (quoting *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1377 (8th Cir.1996)).

The evidence in this case shows that inpatient treatment was suggested originally by the VA substance abuse counselor, and Kozisek has presented no evidence that the county board's decision to follow this suggestion was not a reasonable accommodation. He can only point to evidence indicating that outpatient treatment might also have been a reasonable accommodation. Such evidence is not sufficient to create a triable question of fact. "A disabled individual is not entitled to an accommodation of his choice." *Rehrs v. Iams Co.*, 486 F.3d 353, 359 (8th Cir. 2007) (citing *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1019 (8th Cir. 2000)). Because Kozisek rejected a reasonable accommodation that was offered by the county, he is not a "qualified individual with a disability" who is entitled to protection under the ADA. *See* 29 C.F.R. § 1630.9(d).

## *II. CONCLUSION*

Kozisek's procedural due process claim fails because he did not have a protected property interest in his employment. His First Amendment claim fails because he did not engage in protected speech and no causal connection has been shown. Finally, his ADA claim fails because he was fired for failing to accept a reasonable accommodation that was offered by the county. This was a legitimate, nondiscriminatory reason for his termination, and not a pretext for discrimination.

Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment (filing 25) is granted, and the plaintiff's action is dismissed with prejudice. Judgment shall be entered by separate document.

October 24, 2007.                              BY THE COURT:

                                                                             s/ *Richard G. Kopf*
                                                                             United States District Judge